The next matter on our calendar is within the Sabine Oil & Gas Bankruptcy. Sabine Oil versus Nordheim. Thanks. May it please the Court. My name is Yvonne Ho, and I represent Nordheim Eagleford Gathering LLC, who is the sole remaining appellant in this case. Nordheim's appeal hinges on fundamental principles of Texas property law that govern thousands of agreements throughout the oil and gas industry. Like so many other producers and midstream companies, the parties in this case structured their agreements so that the covenants would run with the land under Texas law, and expressly agreed that the covenants would run with the land. The district courts . . . Can't it run with the land if it's merely a contract between two parties? Yes. In fact, many types of covenants that run with the land arise in a contractual context. Then it becomes a legal question of whether they satisfy the prerequisites for a covenant to run with the land. Don't you need a successor to have it run with the land, because all you have here are two parties. You have a contract. Well, usually the question of whether a covenant runs with the land arises when there has been a subsequent transfer, and then the debate at that point is whether a successor is bound. Right. But we have no successor here, right? Right. Once the gas or oil comes out of the ground, it becomes personal property, not real estate, right? Well, let me back up, because the notion of whether the covenants run with the land is that Nordheim has received a property interest, and, you know, that means that regardless of Sabine's rejection of these agreements in bankruptcy, even Sabine agrees that if the covenants run with the land, that means they can't be wiped away in bankruptcy, and they endure any attempt to object to them, and if Sabine, for some reason, were to transfer those interests to somebody else, they also would endure and bind any successors. Now, as far as, you know, the contractual nature, that sort of speaks to the question of factor in the test for real covenants, is whether they touch and concern the land. Now, the Texas Supreme Court has recognized at least two different tests, but both share the same fundamental inquiry, and that is whether the covenants affect Sabine's property rights, and the answer to that question is yes. If we look at the first of the Westland tests, and that test asks if the covenants affect the nature, quality, or value of Sabine's property interests, independently of collateral circumstances, or affected Sabine's mode of enjoying those interests. What we have here are Sabine's interests in the form of oil and gas leases, and the key component of an oil and gas lease is that it carries the inherent right to develop what's under the ground. It's in the mineral estate. And just— Go back to my earlier statement, that once the oil or gas has been taken from the land, it becomes personality, right? Not real property. If there were just an agreement— Is that correct? If they were just dealing with severed minerals— No, I'm asking you basic principles of contract law and real estate law. Once it's removed from the land, it becomes personal property, not real estate, right? Yes, but it depends, as far as this case goes, the inquiry depends on what the covenant actually does. This covenant does more than burden realty, or more than burden personal property, because what it does is it limits Sabine's use and mode of enjoying its interests, its oil and gas leases, while basically as to unextracted minerals. So the minerals are unextracted under Texas law, Hornbook law, those are realty, not personal property. Does it matter that Nordheim was just providing services, though, and returning the gas and condensate to Sabine? I don't think that categorization of what Nordheim is doing affects whether they satisfy the legal test where the covenant to touch and conserve the land. The analysis actually focuses on what the impact is on Sabine's otherwise exclusive rights in its property. And just last year, the Texas Supreme Court recognized that the right to develop, which is inherent in an oil and gas lease, also includes the exclusive rights to use, dispose of, and also to transport production when it occurs. And so— But that's not what they were doing here. They were processing it and returning it to Sabine. Well, there's certainly—no, it's more than just—it's also the transportation. Where were they transporting it to? They're transporting it through pipelines to Nordheim's gathering facility and processing it, removing water, and essentially all to Sabine's specifications, and then transporting through other pipelines to deliver it to a specified location. Which was on the tract. I think the originating point was on the tract. I'm not exactly sure in relation to the dedicated area. Wasn't it on the tract, too? Pardon? Weren't they just all within the tract? This was all occurring within the tract? It was on the tract, from the wells to these sort of receipt points. And some of those receipt points were on the tract. Others are not entirely clear from the record. But there was also a joining parcel that was conveyed to Nordheim, which is where the actual gathering and additional easements pipelines were constructed. For gathering and processing? Of the gas and condensate. I see. But then returning it? And then returning it. That's right. But the mere fact that it's not a temporary—or that it's not a permanent possession doesn't affect the characterization of these as covenants that touch and concern the land. Because they plainly burden how Sabine is going to dispose of or use its property. Because it no longer has exclusive rights to possession. And certainly it has burdened its otherwise exclusive right to transport or conduct operations or transport production, however it might choose. So under this first Westland test, the covenants affect both the nature of Sabine's interests, no matter the circumstances, and also how Sabine enjoys those interests. Well, Nordheim's rights arise once the gas is extracted from the land. Isn't that correct? That's correct. They're triggered upon production. Right. So you have no rights in whatever gas remains in the land, as long as it's not extracted. Correct? Essentially, those rights lie dormant unless and until production occurs. That's correct. And once the gas is extracted, it becomes personal property, not real property. Isn't that correct? That's correct. Then help me. I don't understand how it could run with the land. Well, a good example that we've discussed in our brief is the implied covenant to market oil and gas. Obviously, there is no oil and gas to market at all, unless and until production actually happens. And yet, Sabine doesn't dispute, and certainly Texas law makes clear, that the implied covenant to market gas runs with the land. So the fact that these covenants are triggered only upon production isn't legally material to whether they run with the land. The other instructive case is the Fifth Circuit's decision in Enright Energy Tech. There, there was a covenant to pay a transportation fee for using a gas pipeline. And, in fact, the party who was banned complained that it shouldn't run with the land because, you know, they could circumvent it altogether by simply choosing not to use that pipeline. And yet the Fifth Circuit held that the possibility that these covenants could expire by force of events or be circumvented altogether doesn't affect their characterization as covenants that run with the land. One of your arguments is that why would, why would these servicers entered into these agreements without the protections of the covenants running with the land because they have to spend a lot of money to build the facilities to do this, right? But that happens a lot when there's no contract running with the land. You just take that chance that you're both going to discharge your obligations under the contract. Why is, why is this different in Texas or elsewhere, where you have to build these facilities maybe right next to the track, like here, but that happens a lot in business, right, where you got to take a chance, build facilities, and hope that the contract is executed? I think that's true in its general matter, but this industry has long relied on these dedication covenants and the fact that they would endure any transfers or, you know, producer bankruptcy in order to establish the infrastructure that's necessary to get gas to market. And there's a good reason for that because they've hooked into these tests under the covenant burdens, the use or enjoyment of land, it definitionally runs with the land. Now, the other issue that, um, that the bankruptcy court addressed, but that, um, the district court didn't reach is whether there was some additional privity of a state requirement. Now, even if Texas law requires horizontal privity and we submit it doesn't, that requirement would be established here. And that's because, um, the bankruptcy court focused on whether there was actually a conveyance of Sabine's interest, a piece of Sabine's interest to Nordheim in connection with the creation of the covenants. But that's not the only way you can establish horizontal privity. Under the first restatement, section 534A, you can also establish horizontal privity if there was a conveyance of property that's benefited by the covenants. And that's what would happen here. As part of a single integrated transaction, Sabine transferred property to Nordheim that's benefited by the covenants and specifically a parcel and easement that, where the, um, gathering facilities were established. And in any event, the Texas Supreme Court most recent decisions, and it's been a while since the Texas Supreme Court has even addressed privity at all, um, specifically Westland and Inwood show that the Texas Supreme Court is requiring vertical privity, not horizontal privity. In Westland, for example, the court concluded that privity of a state exists in this case by virtue of an assignment of certain oil and gas leases to certain successors. This is purely a vertical privity analysis. It's not horizontal privity. Now, Sabine has fixated on some dictum a couple sentences earlier in Westland, suggesting that there might be privity of a state between the parties to the assignment or to the agreement. But that ignores that a few sentences later, the actual holding in Westland is that privity existed based on the transfer property, which again is solely a vertical privity analysis. And Inwood is very much along those lines. Um, and then frankly, there are good reasons why horizontal privity wouldn't be required. As Sabine recognizes historic purpose of horizontal privity is just to ensure that covenants are properly recorded. But that, that role has been superseded by the adoption of state recording statutes, in fact, with which Nordheim complied in this case by filing memoranda with the gathering agreements. In conclusion, your time has long since expired. Yes. Yes. Thank you. And in conclusion, do you want to say something? Uh, in any event, you have two minutes for rebuttal. Okay. Thank you. I'll reserve the rest of my time. Thank you. Okay. We'll hear from Sabine. Um, we have two Amici in this case who want to send this case to the Texas Supreme Court. Why was this bankruptcy brought in New York? Uh, may it please the court, Erin Murphy, on behalf of Sabine. Sabine is, is, is a New York corporation, so they were, uh, perfectly within their rights to bring their bankruptcy case within New York and to ask the New York courts to resolve this question. And we think there's no reason in the world that the New York courts aren't capable of applying Texas law to the facts of this case. Everyone seems to agree what Texas law is. The dispute seems to be in applying the facts to the law. That's exactly right. And that's why, you know, I mean, I think it's telling here that there's not kind of a legal question that anybody's suggesting be certified. There's just a vague suggestion of . . . Well, the horizontal privity still is recognized by the Texas courts. I think that's the only question here that is a question that, in theory, is the type of question that could be certified. The problem there is, I mean, the, the Texas courts have said for a century that horizontal privity is a requirement of Texas law, and there's no case that says anything about backing away from that. All they have are a couple of cases where the court didn't focus on horizontal privity in most of those because it was actually clearly satisfied on the facts of the case. But in all events, you know, in the face of a century of precedent explicitly saying horizontal privity is the law of Texas, I don't think there's any basis for asking the Texas courts if they'd like to reconsider settled Texas law. Is there a question about whether horizontal privity exists here? As a factual matter, our position is that it's quite clear that there is not horizontal conveyance with respect to the property that they actually want to burden here, which is the mineral estate. There was no grant of any rights in the mineral estate itself, in the oil and gas in the ground, and So if we conclude that the two contract, two agreements touch and concern the land, if we make that jump, doesn't that mean that horizontal privity also exists? No, it doesn't. I think horizontal privity requires something more. It requires an actual kind of conveyance of, of some sort of more ownership-like property interest. I mean, if you look at the cases involving horizontal privity- They require more than just touching and concerning the property? Right. They're distinct tests. I mean, the touch and concern test is about the nature of the covenant. The privity test is saying the covenant has to arise in the context of a broader grant of some of the property. And your classic horizontal privity test case would be, you know, in the oil and gas context when I own a mineral estate and I convey to somebody else a lease to develop the estate, but I reserve for myself the rights either to the produced oil or to royalties in it. I've conveyed a property right along the way and reserved a royalty interest. So you, you have a broader grant of property within the context of which there's a conveyance that results in a conveyance that runs with the land. But you know, I think you have to have two- I think you're right about that. What about the, the conveyance in fee simple of the adjacent property to build the facilities? Isn't that, isn't that a real estate transaction? The problem is they need a conveyance of the property to which they want to attach the burden, which is the mineral estate. And the property that they're talking about, the property for the gathering facility and the pipeline, that's different property. That's surface rights. It's a different piece of property. It's adjacent. It's, some of it's adjacent, you know, but none of that matters because under Texas- Some of it not adjacent? I, I, it, it, it's a little unclear exactly where everything is here as a geographic matter in the record, but it's, it's quite clear under Texas law that the mineral estate is a completely separate piece of property from the surface estate. It's severed, kind of in the same way that under New York law you can sever the air rights above the property. So even if it's all adjacent or it's above it or whatever it may be, they're just two different parcels of property for purposes of Texas- Tell me why this isn't a covenant that runs with the land. Sure. So I think the court has already touched on the, the two problems with the touch and concern argument here. The first is that the only rights Sabine, that Nordheim has here are with respect to servicing personal property, gas after it's been removed from the ground. They have no rights to the gas? They have no rights to the gas under the ground. They don't, the way this contract is structured, you know, they, we don't have to produce any gas at all. They may have rights to collect money if we don't deliver gas for them to service, but they can't insist that we produce gas. And they don't have the rights to the gas until it's extracted. Right. And, and, and I think the second problem with it is, I mean, they don't actually have rights to the gas in the ordinary sense. But what about the agreements then, the language about covenants running with the land and the agreements are filed on the land records? You had some sophisticated lawyers putting these agreements together. If you're right, why would you have that language in, in, in both agreements? I mean, to be sure the parties contracted in a way where they thought they were covenanting to run with the land, but that's just not the end of the test under Texas law. And the Texas courts have held, you know, one of the cases that I think is, is really analogous to this one actually, is the Clear Lake Water Authority case. That's a case where, among other things, the, the contract said on its face that it ran with the land. And both the Texas Court of Appeals and the Texas Supreme Court concluded that that was neither a covenant that ran with the land, nor an equitable servitude. And the problem there was very much like the problem here. That was a service contract. It was a water facility next door, adjacent to an apartment complex. And they had built their water and sewer service treatment facility on the express reliance on a promise by the apartment building, that they would use them as the exclusive provider of water and sewer services. And said that that was a covenant that ran with the land. And the Texas courts said, no, you're mistaken. That's not a covenant that runs with the land because that's just a service contract. You have contracted in a way that you will only get your water and sewer services from this adjacent facility. And this adjacent facility may well have relied on that in building its facility. But you didn't contract in a way that impacts how the apartment complex can use its own real property. That dictates what they can do on their real property or takes away any of their rights as to that property. But you can call it whatever you want, but you have to look at what the contract actually provides. Exactly, and it couldn't be clearer, and I don't take Nordheim to dispute as much as they like to point to the language of the contract. That whether a contract says it runs with the land is just one of the elements. I mean, the Texas courts have established a multi-factor element test for whether something runs with the land, and one of the factors is does it say it, but touch and concern is a distinct factor. And the courts always answer that question even when they are faced with contracts that say on their face that they run with the land. So that just doesn't answer the ultimate question. The ultimate question is, setting aside privity, they also need horizontal privity, but for touch and concern. The question is, does it impact the rights with respect to the real property? And it doesn't here because, first of all, their only rights are with respect to personal property, the post-extraction minerals, and second of all, even with respect to what they have, I mean, it's not a property right. They have the right to service the gas and give it back to us. And there's just nothing in Texas law that says that if you have the rights to service someone else's property, real or personal, that that constitutes a property right of your own. I mean, they point to these cases that mention in the course of explaining what the right to develop is, that part of it is the ability to transport what you're developing. But those cases are just explaining that in the course of marketing gas, you're allowed to transport it. None of those cases say anything like that if you hire someone to help you with the transportation of your gas from point A to point B, you've somehow given them rights in the real property of the mineral estate from which you remove the gas. I don't think that's because there's never been a transportation contract in the history of Texas oil and gas law. It's just because everyone understands that contracting with somebody to transport your gas from point A to point B is not a real property interest that runs with the land, it's a service contract. You said earlier, counsel, that should you fail to deliver certain amounts of gas, you could be sued for breach of contract, so that is the basis for the rejection in the bankruptcy court of this contract to avoid that particular lawsuit. Essentially, yes. I mean, the way the contract is structured, it builds in a remedy, an exclusive remedy. If we don't provide gas, we have to pay deficiency payments. And the rejection was basically done because we would have been faced with the deficiency payments and they wouldn't have made economic sense for purposes of the estate once Sabine was in bankruptcy. Now, just to be clear, rejection of a contract is a breach of contract. They get breach remedies, the problem is they have to get in line as a creditor of the bankruptcy estate. And they want 100 cents on the dollar instead of having to wait in line with everybody else as a creditor to collect on this. But I think it's important to recognize that we're not here to say this wasn't a valid contract as between these parties. And that but for the bankruptcy, we wouldn't have needed to perform or had to face breach of contract problems if we didn't. But we are where we are. Sabine ended up in bankruptcy and this was an executory contract, a classic service contract concerning personal, not real property. And we are entirely within our rights to reject that contract. So if there's no further questions, we would ask the court to affirm the decision below. Thank you, counsel. Ms. Ho, you have two minutes for rebuttal. Thank you. A couple of key points. First, the lower courts are laboring under this misconception that the touch and concern test requires some sort of conveyance of part of Sabine's actual unproduced minerals. That's not the test. In fact, Sabine at some point, actually I think pages 30 to 31 of the brief recognized that a conveyance isn't necessary to establish that a covenant touches and concerns the land. So this notion that it's not accurate to think that the Nordheim covenants actually only impact personal property. Because what they actually do, like the covenants in the American refining case, is they burden the user disposition of gas and condensate that are inherent in and are part of this estate itself when the contract was made. The gathering room has described exactly which interests are being burdened. And it dedicates and requires the delivery of every single molecule of gas and condensate that Sabine extracts from the ground to be delivered to Nordheim's facilities. And so that is what satisfies the first Westland test for touch and concern. And second, counsel mentioned the clear late test, talking about a services contract for water and sewer services. Well, the difference there is that it wasn't affecting the use or disposition of the land itself. And here, the unextracted minerals are inherent in and an integral part of the mineral estate. The right to develop is inherent in the mineral estate, and that right is clearly affected and lessened by the covenants requiring the delivery of all production to Nordheim's facilities. If there are no further questions, I'll give the remainder of my time back to the court. Thank you. Thank you. Thank you both. We will reserve decision.